## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CAMERON J. KITKO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) CIVIL ACTION NO. 3:10-189 |
| v. | ) JUDGE KIM R. GIBSON |
| | ) |
| RANDALL YOUNG, *in his* | ) |
| *individual capacity*, | ) |
| | ) |
| Defendant. | ) |

## <u>MEMORANDUM AND ORDER OF COURT</u>

**GIBSON, J.**

### I.   SYNOPSIS

This matter comes before the Court on Defendant's Motion for Summary Judgment (Doc. No. 110). Defendant seeks summary judgment on the sole remaining count (Count II) of Plaintiff's Second Amended Complaint (Doc. No. 45), which asserts a claim against Defendant Young pursuant to 42 U.S.C. § 1983 for a violation of Plaintiff's Fourth Amendment rights. Plaintiff opposes the Motion. (See Doc. No. 116). For the reasons set forth below, the Court will **GRANT** Defendant's Motion.

### II.   JURISDICTION AND VENUE

Jurisdiction is proper pursuant to 42 U.S.C. §§ 1331 and 1343. Venue is proper pursuant to 42 U.S.C. § 1391(b).

### III.   FACTUAL AND PROCEDURAL BACKGROUND

This case arises from a series of events leading to the application for and execution of a warrant to search Plaintiff Cameron J. Kitko's ("Plaintiff") residence in Punxsutawney,

Pennsylvania ("Plaintiff's residence"), on February 3, 2010. The facts that follow are undisputed or construed in the light most favorable to Plaintiff as the non-moving party. Facts insufficiently denied and not otherwise controverted, however, have been deemed admitted per Local Civil Rule of Court ("Local Rule") 56E.[1]

Walter Kitko ("Walter"), Plaintiff's brother, and Lisa Rossi ("Rossi") began a secret relationship in 2003 or 2004. (Doc. No. 118 at 1 ¶ 1; Doc. No. 119-6 at 18:5-16; Doc. No. 123 at 2).[2] This relationship continued until approximately 2009. (Doc. No. 119-6 at 18:5-18; Doc. No. 112 at 5 ¶ 41). Because of the secret nature of the relationship, Walter and Rossi met at various locations. (Doc. No. 118 at 5 ¶ 13; Doc. No. 119-9 at 32:4-21). One such location at which Walter and Rossi met many times during the course of their relationship was Plaintiff's residence in Punxsutawney, Pennsylvania. (Doc. No. 118 at 1 ¶ 2; Doc. No. 119-6 at 25:15-26:10; Doc. No. 123 at 2; Doc. No. 112 at 6 ¶ 44). Walter resided with Plaintiff, Walter's

---

[1] The Court notes that Plaintiff's Responsive CSMF does not respond paragraph by paragraph to Defendant's CSMF. Instead, Plaintiff's Responsive CSMF groups several paragraphs, containing facts that Defendant alleges are undisputed and material, and responds to them together. Further, Plaintiff does not specifically admit or deny each fact asserted by Defendant and does not separate other material facts that Plaintiff believes are at issue or are necessary for disposition of the instant motion. This style of responding makes it difficult for the Court to determine which facts Plaintiff admits and which facts Plaintiff denies and is not consistent with the local rules. See Local Rule 56C. However, because Plaintiff does allege facts, supported with citations to the record, attempting to controvert Defendant's CSMF, the Court undertakes to sort out Plaintiff's unclear Responsive CSMF to avoid the delay and expense that would result if Plaintiff was required to resubmit his Responsive CSMF in a form that meets the requirements of the Local Rules. Per Local Rule 56E, the Court deems admitted the facts that are asserted by Defendant and supported by appropriate citations to the record, and which Plaintiff has not addressed in his Responsive CSMF. Defendant did not submit a separate filing in the form of a CSMF responding to the new matter in Plaintiff's admissions and denials in Plaintiff's Responsive CSMF. In his Reply Brief in Support of Motion for Summary Judgment (Doc. No. 123), Defendant did address, however, some of the new matter asserted in Plaintiff's Responsive CSMF. Given the Court's decision to forgive Plaintiff's failure to comply with several aspects of the Local Rules, the Court will also overlook the fact that such responses are contained in a Reply Brief rather than a Responsive CSMF and will cite to Defendant's Reply Brief and the citations contained therein where appropriate. New matter asserted by Plaintiff and supported by a citation to the record that is not subsequently denied or otherwise controverted by Defendant is deemed admitted, per Local Rule 56E.

[2] Where the Court cites to record evidence in the form of depositions, the Court's citation uses the ECF document number and deposition page number. Where the Court cites to record evidence other than depositions, the Court's citation uses the ECF document number and ECF page number.

2

brother, at Plaintiff's residence for approximately two to three years, until late July 2008 (Doc. No. 119-9 at 7:8-8:11; Doc. No. 118 at 7; Doc. No. 123 at 2). Walter used Plaintiff's residence as his primary residence during this period. (Doc. No. 112 at 5 ¶ 43; Doc. No. 113-4 at 12:20-22). Walter and Rossi did not meet at Plaintiff's residence after July 2008, (Doc. No. 118 at 1 ¶ 3; Doc. No. 119-9 at 33:1-11), but their relationship continued until July 2009 (see Doc. No. 118 at 5 ¶ 14; Doc. No. 119-9 at 11:19-12:9; cf. Doc. No. 112 at 5 ¶ 41).

On September 29, 2009, Officer Randall J. Young ("Officer Young" or "Defendant"), a police officer for the City of Dubois, Clearfield County, Pennsylvania, (Doc. No. 112 at 8 ¶ 64; Doc. No. 113-9 at 4:10-12; 22:10-12) was dispatched by Clearfield County Control to contact Rossi who complained that she was being harassed and stalked by Walter Kitko, Plaintiff's brother (Doc. No. 112 at 1 ¶ 1; Doc. No. 118 at 1 ¶ 1). Rossi informed Officer Young that Walter, Rossi's ex-boyfriend, had been harassing her via voicemail and text messages left on Rossi's cell phone after Rossi advised Walter that she did not want to have any further contact with him. (Doc. No. 112 at 1 ¶ 2; Doc. No. 118 at 1 ¶ 1).

From July 2009 to September 29, 2009, Walter used a phone number with an 814 area code and the last two digits of 11 ("phone number 814-xxx-xx11") to contact Rossi with harassing messages. (Doc. No. 112 at 1 ¶ 4; Doc. No. 118 at 1 ¶ 1). Rossi showed Officer Young the text messages she received from Walter. (Doc. No. 112 at 1 ¶ 3; Doc. No. 118 at 1 ¶ 1). Officer Young attempted to contact Walter at phone number 814-xxx-xx11 on September 29, 2009, and left a message for Walter to contact him. (Doc. No. 112 at 1 ¶ 6; Doc. No. 118 at 1 ¶ 1). After September 29, 2009, Walter began using a phone number with an 814 area code and the last two digits of 14 ("phone number 814-xxx-xx14") to send messages to Rossi. (Doc. No. 112 at 1 ¶ 5; Doc. No. 118 at 1 ¶ 1).

3

On October 8, 2009, Rossi informed Officer Young that she received another message from Walter. (Doc. No. 112 at 2 ¶ 7; Doc. No. 118 at 1 ¶ 1). Officer Young again called Walter and left a message informing Walter not to contact Rossi or else he would be arrested. (Doc. No. 112 at 2 ¶ 8; Doc. No. 118 at 1 ¶ 1). After Officer Young attempted to contact Walter in October 2009, Walter began contacting Rossi solely from a cell phone number with a 585 area code and the last two digits of 91 ("phone number 585-xxx-xx91"). (Doc. No. 118 at 1-2 ¶ 4; Doc. No. 123 at 3). Although this number had a New Jersey area code, Rossi knew this cell phone belonged to Walter. (Doc. No. 118 at 2 ¶ 5; Doc. No. 119-6 at 31:8-13; Doc. No. 123 at 3). On November 15, 2009, Officer Young was again dispatched to speak with Rossi. (Doc. No. 112 at 2 ¶ 9; Doc. No. 118 at 1 ¶ 1). Rossi advised Officer Young that she received a text message[3] from phone number 585-xxx-xx91 that depicted her naked from the waist up. (Doc. No. 112 at 2 ¶ 9; Doc. No. 118 at 1 ¶ 1). Rossi told Officer Young that she never gave anyone, including Walter, permission to take nude or partially nude pictures of her. (Doc. No. 112 at 2 ¶ 10; Doc. No. 118 at 1 ¶ 1).

On November 19, 2009, Rossi informed Officer Young that pictures depicting Rossi naked from the waist up were sent to her ex-husband's cell phone from Walter's phone number 585-xxx-xx91. (Doc. No. 112 at 2 ¶ 11; Doc. No. 118 at 1 ¶ 1). Officer Young subsequently met with Rossi and her ex-husband at the Dubois City Police station where they showed Officer Young pictures that had been sent to their cell phones after Rossi advised Walter that she did not wish to have any further contact with him. (Doc. No. 112 at 2 ¶ 12; Doc. No. 118 at 1 ¶ 1). Officer Young also listened to voicemail messages Walter left for Rossi. (Doc. No. 112 at 2 ¶ 13; Doc. No. 118 at 1 ¶1). In one such message, Walter told Rossi that "he would snap

---

[3] Defendant states that Rossi advised Officer Young that she received a "test message." (See Doc. No. 112 at 2 ¶ 9). The Court understands this to be a typo and corrects it accordingly.

4

someone's neck[,] that he was pissed, that he would take it out and there would be a lot of sorry people." (Doc. No. 112 at 2 ¶ 13; Doc. No. 113-1 at 4; Doc. No. 118 at ¶ 1). In these messages, Walter told Rossi that "he was going to kill someone starting in the morning." (Doc. No. 112 at 2 ¶ 13; Doc. No. 118 at ¶ 1; Doc. No. 113-1 at 4). In another message, Walter stated that "he would repay everybody" and would make both Rossi and her ex-husband pay. (Doc. No. 112 at 2 ¶ 14; Doc. No. 118 at ¶ 1). Rossi informed Officer Young that she had sent another message to Walter advising him to stop contacting her. (Doc. No. 112 at 2 ¶ 15; Doc. No. 118 at ¶ 1).

Between November 21, 2009, and December 5, 2009, Rossi's ex-husband received four separate picture messages from phone number 585-xxx-xx91 depicting Rossi naked from the waist up. (Doc. No. 112 at 3 ¶ 16; Doc. No. 118 at 1 ¶ 1; Doc. No 113-1 at 4). Officer Young prepared an Application for Order to subpoena the records and subscriber information for cell phone numbers 814-xxx-xx11 and 814-xxx-xx14. (Doc. No. 112 at 3 ¶ 17; Doc. No. 113-1 at 5). Judge Paul Cherry approved the Application on December 7, 2009, and the Application was thereafter served on Verizon. (Doc. No. 112 at 3 ¶ 18; Doc. No. 113-1 at 5).

On December 10, 2009, Rossi's ex-husband showed Officer Young another picture message he received from phone number 585-xxx-xx91. (Doc. No. 112 at 3 ¶ 19; Doc. No. 118 at 1 ¶ 1). This message also showed Rossi naked from the waist up. (Doc. No. 112 at 3 ¶ 19; Doc. No. 118 at 1 ¶ 1). Approximately four and a half weeks later on January 1, 2010, Rossi's ex-husband informed Officer Young that he received another picture message from phone number 585-xxx-xx91. (Doc. No. 112 at 3 ¶ 20; Doc. No. 118 at 1 ¶ 1). This message showed Rossi giving oral sex to a male. (Doc. No. 112 at 3 ¶ 20; Doc. No. 118 at 1 ¶ 1). Three days later, on January 4, 2010, Officer Young received information from Verizon that the owner information for cell phone 814-xxx-xx11 belonged to Walter 'Jim' Kitko and cell phone number

5

814-xxx-xx14 belonged to Jim Kitko. (Doc. No. 112 at 3 ¶ 21; Doc. No. 118 at 1 ¶ 1). The address listed for both cell phone accounts was the Plaintiff's address in Punxsutawney, Pennsylvania. (Doc. No. 112 at 3 ¶ 21; Doc. No. 118 at 1 ¶ 1). Officer Young then prepared a second Application for Order to subpoena the records and subscriber information for phone number 585-xxx-xx91; the Order was signed by Judge Cherry and sent to Verizon. (Doc. No. 112 at 3 ¶ 22; Doc. No. 118 at 1 ¶ 1; Doc. No. 113-1 at 5). Records for phone number 585-xxx-xx91 showed that the owner information for the number belonged to "OAS phone in the box." (Doc. No. 112 at 3 ¶ 23; Doc. No. 118 at 1 ¶ 1; Doc. No. 113-1 at 5).

On January 22, 2010, Officer Young met again with Rossi. (Doc. No. 112 at 4 ¶ 24; Doc. No. 118 at 2 ¶ 5). Rossi advised Officer Young that, in the past, Walter had mentioned to her that Walter wanted to take videos/pictures of her while she was naked and/or having sex. (Doc. No. 112 at 4 ¶ 24; Doc. No. 118 at 2 ¶ 5). Rossi informed Officer Young that she told Walter she would not allow any such video or picture taking. (Doc. No. 112 at 4 ¶ 25; Doc. No. 118 at 2 ¶ 5). Rossi advised Officer Young that Walter told her that he had purchased surveillance equipment and could videotape Rossi without her knowledge.[4] (Doc No. 112 at 4 ¶ 26). Rossi never saw any surveillance equipment. (Doc. No. 118 at 3 ¶ 6(e); Doc. No. 119-6 at 38:8-10).

---

[4] Plaintiff indicated that "Rossi never told Young Walter kept any camera or video equipment." (Doc. No. 118 at 3 ¶ 6(e)). Plaintiff does not provide a citation to the record to support this averment; and it is therefore insufficient to controvert Defendant's assertion, which is supported by record evidence, that "Rossi advised Young that Walter Kitko told her that he had purchased surveillance equipment." (Doc. No. 112 at 4 ¶ 26). To the extent that Plaintiff's citation to Doc. No. 119-6 at 37-39 is intended to provide support to the assertion that "Rossi never told Young Walter kept any camera or video equipment," the cited portion of the record does not support this allegation. Further, evidence in the record in the form of Rossi's deposition testimony contradicts Plaintiff's averment. (See Doc. No. 124-1 at 35:14-36:23, 38:2-7). Although Rossi first stated during her deposition that she could not recall whether she ever told Officer Young that Walter had such equipment at the Punxsutawney residence (see Doc. No. 118 at 3 ¶ 6(c); Doc. No. 119-6 at 45:5-8), Rossi indicated that she was not sure she understood the question and requested clarification (see Doc. No. 119-6 at 45). Once the question was clarified, Rossi stated that she believed she did tell Officer Young that Walter may have his cameras and surveillance equipment at Plaintiff's residence, or "something of that nature." (See Doc. No. 119-6 at 45:9-18).

6

Rossi informed Officer Young that Walter carried a backpack around but that Walter would not let her see what was in the backpack. (Doc. No. 112 at 4 ¶ 27; Doc. No. 124-1 at 39:24-40:10, 40:25-41:2, 53:12-24). Rossi further informed Officer Young that she had sex with Walter at Plaintiff's residence and may have had oral sex with Walter in the bedroom of the house. (Doc. No. 112 at 4 ¶ 28, 6 ¶ 45). Walter took nude photographs of Rossi at the Plaintiff's residence with a camera he kept there (Doc. No. 112 at 6 ¶¶ 49-50; Doc. No. 113-4 at 18:22-19:10). Rossi could not tell where the photographs were taken based on the images themselves (Doc. No. 118 at 3 ¶ 6(d); Doc. No. 119-6 at 23:3-19).

Rossi reported to Officer Young that Walter lived at an address in Anita, Pennsylvania ("Walter's residence"). (Doc. No. 112 at 4 ¶ 29). Rossi told Officer Young that Walter had informed her that he owned Plaintiff's residence and that Walter permitted his brother—the Plaintiff—to live there. (See Doc. No. 112 at 4 ¶ 30, 7 at ¶ 61; Doc No. 113-8 at 52:20-22; Doc. No. 124-1 at 42:4-17, 60:11-17). Walter had a bedroom at the Plaintiff's residence when he lived there (Doc. No. 112 at 5 ¶ 42; Doc. No. 113-4 at 12:10-16), and Rossi had no reason to believe that Walter did not own the Plaintiff's residence (Doc. No. 112 at 7 ¶ 62; Doc. No 113-8 at 55:19-56:1). Rossi informed Officer Young that she had sexual relations with Walter at the Plaintiff's residence. (Doc. No. 112 at 4 ¶ 31). Rossi never stayed overnight at the Plaintiff's residence. (See Doc. No. 119-6 at 44:7-45:4).[5]

Walter's residence in Anita, Pennsylvania was for sale at the time Officer Young applied for the warrant to search Plaintiff's residence, and Officer Young believed that Walter kept

---

[5] Plaintiff alleges that Rossi stated she never informed Officer Young that "she stayed, particularly overnight[,] at the Plaintiff's home." (Doc. No. 118 at 2-3 ¶ 6(b)). In support of this allegation, Plaintiff cites pages 41-45 of Rossi's deposition. (See *id.*). The transcript cited by Plaintiff supports the fact that Rossi never stayed overnight at the Plaintiff's residence, but does not support Plaintiff's claim that Rossi never told Officer Young that she stayed at the Plaintiff's residence. (See Doc. No. 119-6 at 41:1-45:23).

custody of his phones and account information at Plaintiff's residence during this time. (Doc. No. 112 at 4 ¶ 32; Doc. No. 113-1 at 6). On February 3, 2010, Officer Young prepared an Application for Search Warrant with Affidavit of Probable Cause.[6] The items to be searched for and seized included cell phones and any account information or documentation for cell phone numbers 814-xxx-xx11, 814-xxx-xx14, 585-xxx-xx91; naked or partially naked photographs of Rossi; any video tapes or digital movies of Rossi; and any devices that could be used for storage of any such electronic information. (Doc. No. 112 at 5 ¶ 34; Doc. No. 113-1 at 2, 8). The search warrant was approved by the local magistrate judge in Punxsutawney, Jefferson County, Pennsylvania. (Doc. No. 112 at 5 ¶ 36; Doc. No. 113-1 at 2). The search warrant was executed in Jefferson County, Pennsylvania. (Doc. No. 112 at 8 ¶ 65; see Doc. No. 118 at 3-5 ¶¶ 7-8, 10-12; Doc. No. 113-9 at 22:15-23). Officer Young did not participate in the execution of the warrant at the Plaintiff's residence. (Doc. No. 112 at 8; Doc. No. 118 at 5 ¶ 12, 8 ¶ 22; Doc. No. 113-9 at 30:10-20). Computers, cameras, and other electronic equipment were seized from the Plaintiff's residence. (Doc. No. 112 at 5 ¶ 39; Doc. No. 113-3 at 2). Walter was charged with several offenses (see Doc. No. 112 at 6 ¶ 47; Doc. No. 118 at 6 ¶ 16; Doc. No. 113-10) and pleaded guilty to three counts of invasion of privacy (Doc. No. 112 at 6 ¶ 48; Doc. No 118 at 6 ¶ 16; Doc. No. 113-4 at 18:4-8).

Plaintiff filed a Complaint in this matter on July 16, 2010. (Doc. No. 1). Plaintiff filed his Second Amended Complaint (Doc. No. 45) on February 14, 2011. The Court has accepted Doc. No. 45 as Plaintiff's Second Amended Complaint, but has construed Plaintiff's Second

---

[6] The Court notes that Officer Young prepared two separate applications for search warrants—one for Walter's residence in Anita, Pennsylvania, and one for Plaintiff's residence in Punxsutawney, Pennsylvania. Only the search warrant for the Plaintiff's residence is at issue in this case.

Amended Complaint (Doc. No. 45) to include the exhibits attached to Doc. Nos. 35 and 41 but omitted from Doc. No. 45.

On November 30, 2012, Defendant filed the instant Motion (Doc. No. 110) seeking summary judgment on Plaintiff's Second Amended Complaint. In support of the Motion, Defendant contemporaneously filed a Brief in Support (Doc. No. 111) and a Concise Statement of Material Undisputed Facts ("CSMF") (Doc. No. 112) along with an appendix of supporting exhibits (Doc. No. 113). Plaintiff filed a Response (Doc. No. 116) opposing Defendant's Motion for Summary Judgment on December 28, 2012. On the same date, Plaintiff filed a Memorandum of Law in Support of Plaintiff's Opposition to Defendant's Motion for Summary Judgment (Plaintiff's "Brief in Opposition") (Doc. No. 117) and a Counter Concise Statement of Material Undisputed Facts (Plaintiff's "Responsive CSMF") (Doc. No. 118) along with an appendix of supporting exhibits (Doc. No. 119). Defendant filed a Reply Brief in Support of Motion for Summary Judgment (Defendant's "Reply Brief") (Doc. No. 123) and a supplemental appendix on January 11, 2013.

## IV. LEGAL STANDARDS

### A. Summary Judgment

"Summary judgment is appropriate only where . . . there is no genuine issue as to any material fact . . . and the moving party is entitled to judgment as a matter of law." *Melrose, Inc. v. Pittsburgh*, 613 F.3d 380, 387 (3d Cir. 2010) (quoting *Ruehl v. Viacom, Inc.*, 500 F.3d 375, 380 n.6 (3d Cir. 2007)); see also *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(a).[7] Issues of fact are genuine "if the evidence is such that a reasonable jury could return a

---

[7] Rule 56 was revised in 2010. The standard previously set forth in subsection (c) is now codified as subsection (a). The language of this subsection is unchanged, except for "one word—genuine 'issue' bec[ame] genuine 'dispute.'" Fed. R. Civ. P. 56 advisory committee's note, 2010 amendment.

verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); see also *McGreevy v. Stroup*, 413 F.3d 359, 363 (3d Cir. 2005). Material facts are those which will affect the outcome of the trial under governing law. *Anderson*, 477 U.S. at 248. The Court's role is "not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party." *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 581 (3d Cir. 2009). "In making this determination, 'a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor.'" *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 278 (3d Cir. 2000) (quoting *Armbruster v. Unisys Corp*, 32 F.3d 768, 777 (3d Cir. 1994).

The moving party bears the initial responsibility of stating the basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party meets this burden, the party opposing summary judgment "may not rest upon the mere allegations or denials" of the pleading but "must set forth specific facts showing that there is a genuine issue for trial." *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 n.11 (1986)). "For an issue to be genuine, the nonmovant needs to supply more than a scintilla of evidence in support of its position—there must be sufficient evidence (not mere allegations) for a reasonable jury to find for the nonmovant." *Coolspring Stone Supply v. Am. States Life Ins. Co.*, 10 F.3d 144, 148 (3d Cir. 1993).

**B.     42 U.S.C. § 1983**

A plaintiff may assert a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

To state a claim for relief under § 1983, a plaintiff must allege the violation of a right secured by the Constitution or laws of the United States and that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

## V.  DISCUSSION

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, alleging that Officer Young violated Plaintiff's Fourth Amendment rights in connection with Officer Young's procurement of a search warrant for Plaintiff's home.  Plaintiff asserts (1) that the warrant to search Plaintiff's residence was based upon an affidavit lacking in probable cause on its face[8] and (2) that the warrant affidavit contained material falsehoods and omissions.  (See Doc. No. 117 at 15). Defendant contends (1) that the search of Plaintiff's residence was supported by probable cause based on the totality of the circumstances and the information known to the Defendant at the time he applied for and received approval for the search warrant, and (2) that the search warrant application was not defective because there is no evidence that Defendant deliberately or

---

[8] The Court notes that Count II of Plaintiff's Complaint does not clearly set forth this argument.  (See Doc. No. 45 at 10-11).  However, the essence of this argument is contained in the "Facts" section of Plaintiff's Complaint (see Doc No. 45 at 6 (asserting that "at the time [Officer Young] applied for the search warrant, Officer Young had no reasonable basis to conclude that the Plaintiff's residence was, in some way, connected with any underlying alleged criminal conduct")) and in Plaintiff's Brief in Opposition (see Doc. No. 117 at 15 ("The warrant was based upon an affidavit lacking in probable cause on its face"), and 16 ("probable cause for issuance of the search warrant at [Plaintiff's] home simply did not exist")).  Given Plaintiff's *pro se* status at the time the operative Complaint was filed and considering that Defendant addressed the essence of this argument in his Motion for Summary Judgment (see Doc. No. 110 at 40), Brief in Support (see Doc. No. 111 at 7-8), and Reply (see Doc. No. 123 at 15-16), and that no prejudice will result from the Court addressing this argument, the Court will construe Plaintiff's *pro se* Complaint as though this argument was properly presented.

recklessly provided false statements in the application. (Doc. No. 110 at 6). Defendant further asserts that he is entitled to qualified immunity. (*Id.* at 7).

Defendant does not dispute that, at all times relevant to this matter, Officer Young was acting under color of state law. Accordingly, the issue the Court must decide is whether Officer Young's actions deprived the Plaintiff of a federal right.

Plaintiff alleges that Officer Young's actions in procuring a warrant to search Plaintiff's home violated Plaintiff's Fourth Amendment rights. (See Doc. No. 45; Doc. No. 117 at 15-21). The Fourth Amendment to the United States Constitution provides that

the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated, and no warrants shall issue, but upon probable cause supported by oath or affirmation, and particularly describing the place to be searched and the person or things to be seized.

U.S. Const. Amend. IV; *Mapp v. Ohio*, 367 U.S. 643 (1961) (applying Fourth Amendment to the states). "Probable cause exists to support the issuance of a search warrant if, based on a totality of the circumstances, 'there is a fair probability that . . . evidence of a crime will be found in a particular place.'" *Sherwood v. Miulvihill*, 113 F.3d 396, 401 (3d Cir. 1997) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

In the context of a search, the probable cause inquiry "focuses on the relation of criminal conduct to a particular location and not on the activities of any particular person." *United States v. Burton*, 288 F.3d 91, 103 (3d Cir. 2002). "[D]irect evidence linking the residence to criminal activity is not required to establish probable cause" or for the issuance of a search warrant. *Id.*

Instead, probable cause to search can be based on an accumulation of circumstantial evidence that together indicates a fair probability of the presence of contraband at the home of the arrested. … [P]robable cause can be, and often is, inferred by considering the type of crime, the nature of the items sought, the

12

suspect's opportunity for concealment and normal inferences about where a criminal might hide stolen property.

*Id.* (citations omitted).

When a search is executed pursuant to a warrant issued by an independent magistrate, a Plaintiff may raise two types of challenges under § 1983 to challenge the probable cause determination of the officer who applied for the warrant. See *Dintino v. Echols*, 243 F. Supp. 2d 255, 262-63 (E.D. Pa. 2003) (discussing challenges following the execution of arrest warrants); cf. *Wilson v. Russo*, 212 F.3d 781, 786 (3d Cir. 2000) (discussing veracity challenge, relating to arrest warrant); *Orsatti v. New Jersey State Police*, 71 F.3d 480, 483-86 (1995) (discussing legal sufficiency challenge, relating to arrest warrant). First, a plaintiff may raise a challenge to the legal sufficiency of the affidavit presented to the independent magistrate. *Dintino*, 234 F. Supp. 2d at 262-63; *Orsatti*, 71 F.3d at 483. Second, a plaintiff may challenge the veracity of the affiant. *Dintino*, 234 F. Supp. 2d at 262-63 (citing *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978)); *Sherwood*, 113 F.3d 396, 399 (3d Cir. 1997). Plaintiff raises both types of challenges here,[9] and the Court will discuss each in turn.[10]

The Court first briefly pauses to discuss Plaintiff's assertions regarding alleged procedural deficiencies in the procurement of the warrant to search Plaintiff's home. (See Doc. No. 117 at 11-15). Specifically, Plaintiff claims (1) that Judge Chambers "was required to insure [*sic*] that the warrant to search the Plaintiff's home was . . . approved by the Jefferson county

---

[9] See *supra* note 8.

[10] The Court notes that a significant portion of Plaintiff's Brief in Opposition is devoted to discussing the alleged wrongdoing of other actors, such as the Clearfield County District Attorney, the officers executing the search, and the Magistrate Judge who approved Officer Young's warrant application. (See Doc. No. 117 at 4-6, 12-15). The allegedly wrongful or mistaken actions of these individuals are not relevant to the disposition of the instant motion. These individuals are not Defendants in the instant suit, and the alleged wrongdoing of these actors does not provide a basis for Officer Young's liability.

office of the District Attorney[,]" but failed to do so (Doc. No. 117 at 12, 14); (2) that it was an established policy, custom, or procedure for the Clearfield County District Attorney ("DA") to approve the execution of search warrants for counties in which the Clearfield County DA has no prosecutorial authority (Doc. No. 117 at 12); (3) that the DA testified that Clearfield County officers must obtain the approval of each respective county DA "on warrants to be executed in that county prior to seeking judicial approval" (Doc. No. 117 at 12-14); and (4) that Officer Young had no legal or jurisdictional authority to execute the search warrant upon Plaintiff's home because the circumstances surrounding the procurement and execution of the search warrant do not meet the requirements of 42 Pa. Cons. Stat § 8953(a)(1) (providing general rules for statewide municipal police jurisdiction) (see Doc. No. 117 at 12-15).

Beyond the fact that not all of these claims are substantiated by Plaintiff's evidence, Plaintiff fails to explain how the acts and omissions alleged in these claims violate a right secured by the Constitution or laws of the United States. Although Plaintiff cites the Fourth Amendment at the outset of the section containing these arguments (see Doc. No. 117 at 11), the alleged procedural deficiencies asserted by Plaintiff stem from alleged violations of local rules of criminal procedure (see Doc. No. 117 at 12; Doc. No. 119-3 at 2) and state law (see Doc. No. 117 at 13-15). Because violations of state law and local rules do not provide a basis for a claim pursuant to 42 U.S.C. § 1983, unless they also violate the Fourth Amendment (see *Robison v. Via,* 821 F.2d 913, 922 (2d Cir.1987); *Eichelman v. Lancaster Cnty.*, 510 F. Supp. 2d 377, 386 (E.D. Pa. 2007)), and because the sole remaining claim of Plaintiff's Amended Complaint states a claim for relief pursuant to 42 U.S.C. § 1983 for a violation of Plaintiff's Fourth Amendment rights, Plaintiff is not entitled to any form of relief as a result of these alleged wrongs. Consequently, the facts contained in Defendant's CSMF and Plaintiff's Responsive CSMF

14

regarding the alleged violations of state and local law, rules, or customs are omitted from the Factual Background section above as irrelevant to the issues to be decided by the Court, and the arguments contained in the briefs of both parties will not be further addressed by the Court.

Thus, the issues before the Court are (1) whether Officer Young's affidavit of probable cause supporting the application for a search warrant for Plaintiff's residence was legally sufficient, and (2) whether Officer Young, in applying for a search warrant, knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that created a falsehood which were material, or necessary, to the finding of probable cause. The Court will also consider whether Defendant is entitled to qualified immunity.

## A. Plaintiff's Challenge to the Legal Sufficiency of the Affidavit and Officer Young's Determination of Probable Cause

Defendant argues that he is entitled to summary judgment because there was no violation of Plaintiff's Fourth Amendment rights. (Doc. No. 110, at 6, ¶ 39). Defendant further argues that he is entitled to qualified immunity.

### 1. Law

An officer who applies for a warrant, when it is clear that no probable cause for a search warrant exists, may be liable for damages under § 1983. See *Malley v. Briggs*, 475 U.S. 335, 341, 344 n.6 (1986) (discussing warrant for arrest, not search, but noting distinction between search and arrest warrant would not make a difference in the degree of immunity accorded to the officer who applied for the warrant); *Orsatti v. New Jersey State Police*, 71 F.3d 480, 483 (3d Cir. 1995) (discussing arrest, not search). "[G]overnment officials performing discretionary functions," however, are generally "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a

15

reasonable person would have known." *Orsatti*, 71 F.3d at 483 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Police officers are accorded qualified rather than absolute immunity. See *id.*[11] Therefore, an officer applying for a warrant "will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue." *Malley v. Briggs*, 475 U.S. 335, 341 (1986); see *Orsatti*, 71 F.3d at 483. If, however, "officers of reasonable competence could disagree on this issue, immunity should be recognized." *Malley*, 475 U.S. at 341; see *Orsatti*, 71 F.3d at 483.

Where a defendant asserts a qualified immunity defense in a motion for summary judgment, the plaintiff bears the initial burden of showing that the defendant's conduct violated a clearly established statutory or constitutional right. See *Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997). If the plaintiff carries this initial burden, the defendant must then demonstrate "that no genuine issue of material fact remains as to the 'objective reasonableness' of the defendant's belief in the lawfulness of his actions." *Id.*

It is inevitable that, in the course of discharging their duties, mistakes will be made by law enforcement officers, see *Orsatti*, 71 F.3d at 483, and law enforcement officials "who 'reasonably but mistakenly conclude that probable cause is present' are entitled to immunity." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (quoting *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)); see also *Orsatti*, at 483-84. "[P]olice officers applying for warrants are immune if a reasonable officer could have believed that there was probable cause to support the application."

---

[11] Although the existence of probable cause to support a warrant in a § 1983 action is a question of fact, the application of qualified immunity is a question of law, see *Sherwood v. Mulvihill*, 113 F.3d 396, 401 n.4 (3d Cir. 1997), and one which should be resolved at the earliest possible stage of the litigation. See *Orsatti v. New Jersey State Police*, 71 F.3d 480, 483 (3d Cir. 1995). Thus, where the material facts are not in dispute or where the evidence, viewed in the light most favorable to the non-moving party, would not support a factual finding that probable cause did not exist, a district court may decide at the summary judgment stage that a government official is shielded by qualified immunity as a matter of law. See *id*; *Sherwood*, 113 F.3d at 401.

*Anderson*, 483 U.S. at 638 (construing *Malley*, 475 U.S. at 344-45). "[O]nly where the warrant application is 'so lacking in indicia of probable cause as to render official belief in its existence unreasonable,' will the officer lose the shield of immunity." *Orsatti*, 71 F.3d at 483 (quoting *Malley*, 475 U.S. at 341). "[T]he standard for determining the reasonableness of an official's belief in the existence of probable cause is whether a reasonably well-trained officer would have known that his affidavit failed to establish probable cause and that he therefore should not have applied for the warrant under the conditions." *Orsatti*, 71 F.3d at 483 (quoting *Malley*, 475 U.S. at 345). Therefore, the Court must not simply consider whether Officer Young violated Plaintiff's clearly established right. See *Orsatti*, 71 F.3d at 483. Instead, the Court must determine whether a reasonable officer in Officer Young's position could have reasonably believed probable cause existed to search the Plaintiff's home. See *Anderson*, 483 U.S. at 638; *Orsatti*, 71 F.3d at 483.

### 2. Probable Cause

Plaintiff asserts that Defendant violated a clearly established right, pursuant to the Fourth Amendment of the United States Constitution, to be free from a search of one's home pursuant to a warrant that is not supported by probable cause. After viewing the evidence in a light most favorable to Plaintiff, the Court concludes that the facts asserted in Officer Young's affidavit establish probable cause to search Plaintiff's residence, such that the issuance of a search warrant was proper. Officer Young was investigating allegations that Walter Kitko was harassing and threatening Rossi. During the course of his investigation, Officer Young determined, based upon probable cause, that it was necessary to conduct a search of Plaintiff's residence to gather evidence of Walter Kitko's ongoing criminal conduct. Accordingly, Officer Young applied for a search warrant and filed a supporting affidavit of probable cause. (See Doc. No. 113-1).

17

Officer Young's Affidavit of Probable Cause (Doc. No. 113-1) clearly establishes a fair probability that evidence of a crime would be found at the Plaintiff's residence. In his affidavit, Officer Young meticulously detailed the ongoing criminal conduct of Walter Kitko towards Rossi, as reported to Officer Young by Rossi, and documented each step of his investigation of the alleged conduct. (*Id*.). In his affidavit, Officer Young included information that he had gathered from both Rossi and her ex-husband based on numerous meetings with them. (*Id*.). Officer Young stated in his affidavit that he had prepared a court order for the phone records and subscriber information for the cell phone numbers that were being used to harass Rossi, and that Judge Cherry signed the order on December 7, 2009. (*Id*. at 5). According to the affidavit, on January 4, 2010, Officer Young received the phone records and subscriber information from Verizon showing that the owner information for cell phone number 814-xxx-xx11 belonged to Walter "Jim" Kitko and cell phone number 814-xxx-xx14 belonged to Jim Kitko. (*Id*.). According to the affidavit, "[b]oth records show that the address for these cell phones is the same," that being the Plaintiff's residence. (*Id*.). According to the affidavit, Rossi stated that "she did have sex and may have performed oral sex with Kitko in the bedroom of this house." (*Id*. at 6). Importantly, Officer Young notes in the affidavit that while Kitko lives at an address in Anita, Pennsylvania, Rossi reported to him that "Kitko often times stays at a residence . . . [in] Punxsutawney . . . that this residence is owned by Kitko and Kitko permits his brother to live at the residence . . . that Kitko often times stays at the residence [in Punxsutawney] with his brother . . . [and] that [Rossi] has stayed at the residence [in Punxsutawney] with Kitko and that she has had sexual relations with Kitko at this residence." (*Id*. at 6). Officer Young further noted in his affidavit that during the course of his investigation, he learned that Walter Kitko's Anita residence was being offered for sale and that it was thus "reasonable to believe that Kitko keeps

18

custody of his cell phones at [the Punxsutawney] residence, as well as records and account information relating to these cell phones . . . that Kitko maintains custody of nude pictures of Rossi at the [Punxsutawney] residence, as well as the recording and or surveillance equipment that was used to obtain these images . . . [and] that Kitko maintains possession of the backpack and recording equipment and that these items will be located within Kitko's [Punxsutawney] residence because Kitko is selling the [Anita] residence." (*Id.* at 6-7). Officer Young noted in his affidavit that the items that he expected to find at Plaintiff's residence were continuing to be used "by Kitko for the ongoing criminal activity of harassing Lisa Rossi and . . . that Kitko maintains custody and possession of these items to further his criminal activity." (*Id.* at 7).

Accordingly, it was reasonable for Officer Young to believe that, based on the totality of the circumstances, probable cause existed to support the issuance of a search warrant because he reasonably believed there was a fair probability that evidence of a crime would be found at the Plaintiff's residence. See *United States v. Miknevich*, 638 F.3d 178 (3d Cir. 2011). As was comprehensively detailed in the affidavit, over the course of six months, Officer Young investigated an ongoing criminal activity and gathered credible information from multiple sources, including the victim, Rossi, and her ex-husband; Officer Young learned from Rossi that Walter Kitko sometimes stayed at the Plaintiff's residence, that Walter and Rossi had sexual relations at the Plaintiff's residence, and that Walter Kitko secretly videotaped these sexual encounters; Officer Young obtained phone records identifying the Plaintiff's residence as the address for Walter Kitko with regard to two cell phones used in the criminal activity; and Officer Young observed Walter Kitko's Anita residence for sale. All of these circumstances—among others detailed in Officer Young's affidavit—support a finding that probable cause existed for the issuance of a search warrant.

19

Having carefully reviewed Officer Young's affidavit, this Court finds that probable cause existed to support the issuance of a search warrant because, in light of all of the surrounding circumstances, there existed a fair probability that evidence of a crime would be found at the Plaintiff's residence. See *Sherwood v. Mulvihill*, 113 F.3d 396, 401 (3d Cir. 1997) (noting that a district court may conclude in the appropriate case that probable cause did exist as a matter of law if the evidence, viewed most favorably to Plaintiff, reasonably would not support a contrary factual finding).

Plaintiff contends that probable cause for the issuance of the search warrant simply did not exist. Plaintiff asserts Officer Young's warrant application and affidavit fail to establish probable cause for a number of reasons.

### a. Alleged Stale Information in Warrant Application

First, Plaintiff argues Officer Young relied upon stale information in his affidavit and that the information was no longer reliable. Specifically, Plaintiff asserts that after Officer Young attempted contact with Walter's cell phones with 814 area codes in September and October 2009, Walter ceased communication with Rossi from both of those phones. According to the Plaintiff, because Walter no longer attempted to communicate with Rossi from the phones registered to Plaintiff's residence, none of Walter's criminal activities could be linked to Plaintiff's residence. (Doc. No. 117 at 16-17).

It is well-settled that "probable cause to justify the issuance of a search warrant must exist at the time the warrant is issued." *United States v. Harris*, 482 F.2d 1115, 1119 (3d Cir. 1973); *United States v. Boyd*, 422 F.2d 791 (6th Cir. 1970). Accordingly, the age of the information supporting a warrant application is a factor in determining probable cause. *See United States v. Forsythe*, 560 F.2d 1127, 1132 & n.6 (3d Cir.1977); *see also United States v.*

*McNeese*, 901 F.2d 585, 596 (7th Cir.1990). "If too old, the information is stale, and probable cause may no longer exist." *United States v. Harvey*, 2 F.3d 1318, 1322 (3d Cir. 1993). However, age alone is not determinative of staleness. "The determination of probable cause is not merely an exercise in counting the days or even months between the facts relied on and the issuance of the warrant." *United States v. Williams*, 897 F.2d 1034, 1039 (10th Cir.1990), *cert. denied*, 500 U.S. 937 (1991). Indeed, where an affidavit "properly recites facts indicating activity of a protracted and continuous nature, a course of conduct, the passage of time becomes less significant." *United States v. Johnson*, 461 F.2d 285, 287 (10th Cir. 1972). Rather, the issue as to whether or not information in an affidavit is stale depends upon the nature of the activity and the type of evidence and usually will require review on a case-by-case basis. See *United States v. Harris*, 482 F.2d 1115, 1119 (3d Cir. 1973) ("The question of the staleness of probable cause depends more on the nature of the unlawful activity alleged in the affidavit than the dates and times specified therein."); *United States v. Tehfe*, 722 F.2d 1114, 1119 (3d Cir. 1983); see also *United States v. Harvey*, 2 F.3d 1318, 1322 (3d Cir. 1993); *United States v. Zimmerman*, 277 F.3d 426, 434 (3d Cir. 2002).

Here, Plaintiff contends that the search warrant was based on stale information and therefore lacked probable cause because Walter stopped using the cell phones registered to him at the Plaintiff's address after Officer Young advised him to cease contact with Rossi in September and October 2009. (See Doc. No. 117 at 3). Thus, for approximately a four-month period, Walter did not use the cell phones registered at Plaintiff's address to contact Rossi with harassing messages. However, as Plaintiff concedes, Walter "inexplicably continued to forward harassing material to Rossi after Young had twice cautioned Walter to cease harassing Rossi," albeit from a different cell phone with an area code of 585. (See Doc. No. 117 at 3). In fact,

21

Officer Young carefully documented the ongoing nature of Walter Kitko's harassing conduct towards Rossi. Not only was the conduct ongoing, it even escalated to an increasingly egregious nature. Notably, in January 2010, shortly before Officer Young's procurement of the search warrant, Walter Kitko sent photographic text messages to Rossi and Rossi's ex-husband depicting Rossi nude and engaging in oral sex with a male. Thus, while it is true that Walter was no longer using the cell phones registered to the Plaintiff's address in the months immediately preceding the procurement and execution of the search warrant, the protracted and continuous nature of the activity up until the time of the execution of the search warrant defeats Plaintiff's argument of staleness. See *Harris*, 482 F.2d at 1119; *Johnson*, 461 F.2d at 287.

Furthermore, Officer Young's affidavit of probable cause provided additional grounds for searching the Plaintiff's residence other than to recover the two cell phones with (814) area codes and related cell phone records. For example, according to the affidavit, Walter and Rossi engaged in sexual relations at the Plaintiff's residence (see Doc. No. 113-1 at 6 ¶¶ 18-19); further, it was believed that videos or photographs of Rossi nude and engaging in sexual relations had been secretly recorded by Walter and were being stored at the Plaintiff's residence (*id.* at 6 ¶¶ 18, 22); Rossi reported to Officer Young that Walter owned Plaintiff's residence (*id.* at 6 ¶ 19); and, Officer Young observed Walter's Anita residence being offered for sale (*id.* at 6 ¶¶ 20-21). Accordingly, as stated in the Application for Search Warrant, Officer Young indicated the search would include looking for "any naked or partially naked photographic images of the victim Lisa Rossi . . . any video tapes or digital movies of the victim Lisa Rossi . . . any devise [sic] used for any temporary, intermediate storage of a wire or an elctronic [sic] communication incidental to the electronic transmission thereof . . . any device used for any storage of such a communcation [sic] by an electronic communication service for purpose of a backup protection

22

of the communication." (See Doc. No. 113-1 at 8). The photographs at issue were being sent to Rossi and her ex-husband throughout the month of January 2010 up until the application for and execution of the search warrant. Accordingly, because Officer Young reasonably believed that evidence of a crime related to the secret recording, storing, and transmitting of videos and photographs of the victim at the Plaintiff's residence, and because nude photographs of Rossi were being sent to Rossi and her ex-husband at the time of the application for the search warrant, Plaintiff's argument that the information in the affidavit in support of probable cause was stale is without merit.

### b. Alleged Insufficient Facts to Find Probable Cause

Next, Plaintiff contends that no videos were sent to Rossi from the phones registered to Plaintiff's residence. (See Doc. No. 117 at 17). The Plaintiff argues that the two phones associated with Plaintiff's residence that were used by Walter to harass Rossi were "throw-away cell phones" which were not billed to Plaintiff's residence and, therefore, more was required to substantiate probable cause to enter Plaintiff's home. (Doc. No. 117 at 17). Contrary to Plaintiff's argument, the fact that no videos were sent to Rossi from the two cell phones registered to Plaintiff's residence has no bearing on Officer Young's belief that evidence of a crime—including video recording devices or cameras used by Walter and the photographs and videos of Rossi—were at Plaintiff's residence. Officer Young outlined a number of connections to Plaintiff's residence in addition to the fact that two cell phones were listed by the phone company as registered to that address. (See Doc. 113-1). For example, it is undisputed that Walter lived for two to three years at the Plaintiff's residence and that Walter and Rossi met on many occasions at Plaintiff's residence and had sexual relations there. (*Id.*). Also, Officer Young observed Walter's Anita residence was listed for sale and, based on other information

provided by Rossi, he believed Walter was storing his personal effects, including surveillance or recording devices, at Plaintiff's residence. (*Id.*). Also relevant is the fact that Officer Young believed that Walter owned the Plaintiff's residence. This belief was premised on the fact that Rossi told Officer Young that Walter owned the Plaintiff's residence.[12] Plaintiff has not provided any evidence to contradict the fact that Rossi told Officer Young that Walter owned the Plaintiff's residence. (See Doc. Nos. 113-1 at 6; 113-8 at 52:20-22; 113-9 at 33:1-12). Furthermore, even if Officer Young had known Walter was not the owner of Plaintiff's residence, the affidavit nonetheless articulated probable cause to search the Plaintiff's residence. It is well-settled that the inquiry into whether there is a fair probability that evidence of a crime will be found in a particular place to support a warrant to search "focuses on the relation of criminal conduct to a particular location and not on the activities of any particular person." *United States v. Burton*, 288 F.3d 91, 103 (3d Cir. 2002) (noting even where some factual averments in an affidavit are tainted, "they do not vitiate a warrant which is otherwise validly issued upon probable cause reflected in the affidavit").

Plaintiff further argues that there was no need to enter Plaintiff's home for telephone records because Officer Young had previously obtained such records from Verizon by subpoena. (See Doc. No. 117 at 17). However, this argument has no bearing on whether Officer Young's affidavit establishes probable cause to search the Plaintiff's residence. The evidence sought included both cell phone records *and* the actual phones used to communicate with Rossi, two of which were registered to the Plaintiff's address. Further, the fact that Officer Young obtained

---

[12] The Court notes that Plaintiff has provided evidence in the form of two affidavits that casts doubt on the veracity of Rossi's statement that she believed Walter owned the Plaintiff's residence. (See Doc. Nos. 117-2 and 117-3). However, it is Officer Young's affidavit that is the relevant focus here, not Rossi's statements. Furthermore, these affidavits contain hearsay which would not likely be admissible at trial. See *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 212 (3d Cir. 2001).

records stating that two of the three phones that Walter used to harass Rossi were registered to Plaintiff's address strengthens the conclusion that evidence of a crime would be found at Plaintiff's residence. Likewise, as previously discussed, the application for search warrant lists other items in addition to the two cell phones that were being used to further Walter's criminal conduct towards Rossi.

### c. Alleged False Statements in Warrant Application

Finally, Plaintiff asserts the warrant application fails to establish probable cause because of two assertions in Officer Young's affidavit that were not true or unreasonable.

First, Plaintiff argues that Officer Young wrongly asserted that ongoing criminal conduct was linked to Plaintiff's residence based on the fact that disposable cell phones were "listed as contracted to the Plaintiff's address." (Doc. No. 117 at 16). According to the Plaintiff, Officer Young's assertion is "refuted by Young's knowledge that the '814' telephone numbers had not been utilized to continue the criminal behavior" from October 2009 until the time of the warrant application on February 3, 2010, and thus, no criminal activity was occurring from the phones registered to Plaintiff's residence. (Doc. No. 117 at 16).[13]

To the extent that Plaintiff is asserting that Officer Young provided false information in the warrant, this is a challenge to the veracity of the affiant, not the legal sufficiency of the affidavit, and is addressed in the section below. To the extent that Plaintiff is asserting a staleness argument—that no probable cause exists because the phones linked to Plaintiff's

---

[13] The dates included in Plaintiff's argument in his Brief in Opposition do not match those in Plaintiff's Responsive CSMF and are not supported by Plaintiff's evidence. (Compare Doc. No. 117 at 16 with Doc. No. 118 at 1-2 ¶4). The Court has revised the dates contained in Plaintiff's argument to match with the facts included in section III, *supra.*

residence by Verizon's records were not used after October 2009—the Court has previously addressed this argument.

Furthermore, contrary to the Plaintiff's argument, Officer Young outlined a number of facts in his affidavit linking Walter's ongoing criminal conduct with the Plaintiff's residence. For example, he noted that Rossi identified the cell phone with the 585 area code as Walter's; Rossi stated that Walter owned Plaintiff's residence; Rossi stated that she had met Walter on numerous occasions at that residence and had sexual relations with Walter there; Young believed Walter was keeping his belongings at the Punxsutawney residence because Walter's Anita residence was for sale. Accordingly, based upon the information known to Officer Young as included in his affidavit, the Court concludes that probable cause to search Plaintiff's residence existed despite the fact that, from October 2009 until February 2010, Walter was not using the phones registered to Plaintiff's residence to send communications to Rossi and her ex-husband.

Second, Plaintiff argues that there was no basis to believe video recording devices or cameras would be found at the Plaintiff's residence because no videos or recordings were forwarded to Rossi from the phones registered to Plaintiff's residence. (See Doc. No. 117 at 17). Contrary to the Plaintiff's argument, however, Officer Young provided information in his affidavit to support his conclusion that it was reasonable to believe recording equipment was located at Plaintiff's residence, including that Walter was selling his Anita residence, that Walter often stayed at the Punxsutawney residence, that Rossi and Walter had sexual relations at the Plaintiff's residence, and that Walter had secretly recorded Rossi possibly while at the Plaintiff's residence. These facts, along with others included in the Officer's affidavit, are sufficient to establish probable cause even though no videos or recordings were forwarded to Rossi from the two phones registered to Plaintiff's residence.

26

In sum, Plaintiff has failed to adduce evidence upon which a jury could reasonably conclude that official belief in the existence of probable cause to search Plaintiff's home was unreasonable. See *Orsatti v. New Jersey State Police,* 71 F.3d 480, 483 (3d. Cir.1995); *Malley v. Briggs,* 475 U.S. 335, 341 (1986).

### 3. Qualified Immunity

Furthermore, even assuming that Officer Young, the magistrate, and this Court all improperly concluded that probable cause to search existed based on the facts and circumstances known to Officer Young and included in his affidavit of probable cause, Officer Young is nonetheless entitled to qualified immunity because a reasonable officer could have believed that there was probable cause to support the application, and no rational fact finder could conclude otherwise. See, e.g., *Malley*, 475 U.S. at 341; *Orsatti*, 71 F.3d at 483.

### B. Plaintiff's Challenge to the Veracity of the Affiant

#### 1. Law

Because Officer Young's affidavit and application for a search warrant establish probable cause and, at the very least, are sufficient for a well-trained officer to have reasonably believed that the affidavit established probable cause, the only way Plaintiff can succeed is if he proffers evidence that Officer Young knowingly and deliberately, or recklessly, disregarded the truth in his warrant application, and that a warrant application based on what Officer Young should have told the judge would have lacked probable cause. See *Wilson v. Russo*, 212 F.3d 781, 786 (3d Cir. 2000). "A section 1983 plaintiff who challenges the validity of a search warrant by asserting that law enforcement agents submitted a false affidavit to the issuing judicial officer must satisfy the two-part test developed by the Supreme Court in *Franks v. Delaware*, 438 U.S. 154, 155-56

(1978)." *Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997). Under *Franks* and its progeny, plaintiffs challenging the validity of a search warrant must prove by a preponderance of the evidence "(1) that the affiant knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant; and (2) that such statements or omissions are material, or necessary, to the finding of probable cause." *Id.* at 399; see also *Franks*, 438 U.S. at 171-72.

"[R]eckless disregard for the truth means different things when dealing with omissions and assertions . . . ." *Wilson*, 212 F.3d at 787. "[O]missions are made with reckless disregard if an officer withholds a fact in his ken that 'any reasonable person would have known that this was the kind of thing the judge [reviewing the warrant application] would wish to know.'" *Id.* at 788 (quoting *United States v. Jacobs*, 986 F.2d 1231, 1235 (8th Cir. 1993)). Assertions are made "with reckless disregard when 'viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported.'" *Id.* (quoting *United States v. Clapp*, 46 F.3d 795, 801 n.6 (8th Cir. 1995)). "Unlike omissions, assertions can be made with reckless disregard for the truth even if they involve minor details—recklessness is not measured by the relevance of the information, but the demonstration of willingness to affirmatively distort the truth." *Id.*

If a plaintiff adduces sufficient evidence of false assertions or omissions made knowingly or with reckless disregard for the truth, the court must then assess whether the false statements and omissions were material, or necessary, to the finding of probable cause. *Id.* at 789. "Under *Franks*, falsehoods are deemed material to the finding of probable cause if the affidavit, 'with the . . . false material set to one side . . . is insufficient to establish probable cause.'" *Sherwood*, 113 F.3d at 399 (quoting *Franks*, 438 U.S. at 156). Therefore, if an affidavit submitted to procure a

28

search warrant contains an affirmative misrepresentation, the court must excise the false statement from the affidavit. *Id.* at 400. If the affidavit contains an omission that creates a falsehood, the court must remove the falsehood created by the omission by supplying the omitted information to the original affidavit. *Id.* The Court must then review the "corrected" warrant affidavit and determine whether it would establish probable cause. *Wilson*, 212 F.3d at 789. If it does, and no reasonable jury could conclude otherwise, summary judgment for Defendant is appropriate. See *id.*

### 2. Veracity of Officer Young's Affidavit

The Court now considers whether Plaintiff adduced sufficient evidence such that a reasonable jury could conclude that Officer Young made statements or omissions that he knew were false, or would have known were false except for his reckless disregard for the truth. See *Wilson*, 212 F.3d at 787.

The Defendant asserts that Plaintiff has failed to provide any evidence of deliberate false statements or omissions in Officer Young's warrant affidavit. (See Doc. No. 123 at 11). The Plaintiff contends that Officer Young's application for the search warrant and the accompanying affidavit contained omissions, misstatements, and untruths. (Doc. No. 117 at 17). Plaintiff summarizes, "[T]he warrant gave the totally false impression that Plaintiff's home was either the situs for alleged criminal acts, or, that evidence of the Plaintiff's brother's criminal behavior would be found upon or was located at the Plaintiff's home." (Doc. No. 117 at 18). According to the Plaintiff, the warrant application (1) reveals "falsehoods," (2) uses stale and uncorroborated facts, and (3) contains fabricated or misleading factual statements. (Doc. No. 117 at 18). The Court will briefly consider each assertion.

29

### a. Alleged False Statements in Warrant Application

Plaintiff identifies five statements in Officer Young's warrant application that Plaintiff contends are material falsehoods. First, in the affidavit of probable cause, Officer Young noted "Lisa Rossi reported to your Affiant that [Walter] Kitko lives at . . . [an address in] Anita, PA. However, Rossi further reported that [Walter] Kitko often times stays at a residence . . . [in] Punxsutawney." (Doc. No. 113-1 at 6 ¶ 19). Plaintiff contends that Rossi later denied having provided this information to Officer Young and testified that she had no recollection of it. (Doc. No. 117 at 18). To support his assertion that Rossi's statement to Young was a falsehood, Plaintiff provided two affidavits—one from Stephen Paterson (Doc. No. 117-2), and one from Rita Bowser (Doc. No. 117-3)—in which both affiants indicate that in conversations with Rossi in late 2008, Rossi stated that Walter was living in a cabin because he had been kicked out of his brother Cameron's home. Plaintiff further contends that Rossi was fully cognizant of the fact that Walter had not stayed or resided at Plaintiff's home for one and a half years prior to the search of Plaintiff's home. (Doc. No. 117 at 18).

The relevant inquiry here is whether Officer Young, in applying for the warrant, made statements or omissions that he knew were false, or would have known were false except for his reckless disregard for the truth, not whether Rossi made statements she knew were false. In her deposition, Rossi testified that she could not remember if she told Officer Young that Walter stays at the Plaintiff's home. (Doc. No. 119-6 at 40). However, Rossi's statement is not evidence of a false statement made by Officer Young, but merely an admission that Rossi could not recall everything that she told Officer Young. Plaintiff has not produced evidence from which a reasonable jury could conclude that Defendant knowingly, or with reckless disregard for the truth, falsely stated in his warrant affidavit that Rossi reported that Walter Kitko often stays

at the Plaintiff's residence. Furthermore, in her deposition, Rossi stated that she told Officer Young that Walter owned the Plaintiff's residence. (See Doc. No. 119-6 at 41). Accordingly, Plaintiff's contention is without merit.

Similarly, in the affidavit of probable cause, Officer Young noted, "Rossi further reports that she has stayed at the residence [in Punxsutawney] with Kitko and that she has had sexual relations with Kitko at this residence." (Doc. No. 113-1, at 6, ¶ 19). Plaintiff contends that, while Officer Young noted in his affidavit that Rossi "stayed" at the Plaintiff's residence, Rossi never told Officer Young that she stayed, particularly overnight, at the Plaintiff's residence. (Doc. No. 117 at 19). In her deposition, Rossi indicated that she did not stay overnight or reside at the Plaintiff's residence with Walter. (Doc. No. 119-6 at 42). However, when asked why Officer Young would say that Rossi had "stayed" at the property, Rossi stated "I'm not sure what that means." (Doc. No. 119-6 at 42). While Officer Young's use of the word "stay" in his affidavit is imprecise,[14] Plaintiff has not provided evidence that Defendant's statement that Rossi "stayed at the [Plaintiff's] residence" is a falsehood. The evidence, instead, is indisputable that Rossi and Walter met numerous times over the course of several years at Plaintiff's residence, that they sometimes spent several hours at a time at that residence, that they had sexual relations there, that Walter lived at Plaintiff's residence for a period of time while he was in a relationship with Rossi, and that Walter took nude photos of Rossi while they were at the Plaintiff's residence. (Doc. No. 119-6, at 25; Doc. No. 118-8 at 55:6-12; Doc. No. 113-4, at 13:9-14:17; Doc. No. 119-9, at 12-14, 18-19). Accordingly, Plaintiff has not provided evidence of falsehood.

---

[14] The Court notes that Plaintiff's attorney, during Rossi's deposition, seems to equate the meaning of the word "stay" with "reside." Plaintiff's attorney asked, "So, you're saying you never stayed at the property, *resided* there?" (Doc. No. 119-6 at 42) (emphasis added). However, neither Plaintiff nor Defendant have clarified what the word "stay" as used Officer Young's affidavit actually means.

The remaining three statements in Officer Young's affidavit, which the Plaintiff contends are falsehoods, involve information concerning photographs and videos of Rossi recorded by Walter and the equipment used to record them. Officer Young noted in his affidavit

> It is further reasonable to believe that Kitko maintains custody of nude pictures of Rossi at the [Plaintiff's] residence, as well as the recording and or surveillance equipment that was used to obtain these images. Lisa Rossi reported to your Affiant that Rossi believes Kitko maintains a backpack where he stores and transports his recording and surveillance equipment. Rossi observed Kitko with the backpack and Kitko would never permit Rossi to handle the backpack. Kitko further refused to inform Rossi what was in the backpack and it is [r]easonable for Rossi to conclude that Kitko used the backpack to store and transport his equipment for secretly recording images of Rossi.

(Doc. No. 113-1 at 6, ¶ 22). Plaintiff contends that Rossi denied relating this information to Officer Young and that Rossi testified she never saw the videos or any camera or recording equipment. (Doc. No. 117 at 19).

Contrary to Plaintiff's assertions, Rossi's deposition testimony fully supports Officer Young's affidavit. (See Doc. 119-6). Importantly, when asked whether Rossi indicated to Officer Young that Walter may have had his camera and surveillance equipment at Plaintiff's residence, Rossi stated, "Yes, I believe that I did say that, or something of that nature, based on what the videotapes—the background in the videotapes that I was told about had in them." (Doc. No. 119-6 at 43). Rossi testified that she never saw the videotapes and never saw the surveillance or recording equipment. (Doc. No. 119-6 at 43). This testimony is completely consistent with Officer Young's affidavit. (See Doc. No. 113-1). Officer Young noted that "Rossi *believes* Kitko maintains a backpack where he stores and transports his recording and surveillance equipment" and that Kitko refused to let Rossi see what was in the backpack. (Doc. No. 113-1 at 6 ¶ 22) (emphasis added).

32

The Court notes that the facts underlying the criminal investigation of Walter Kitko's conduct leading to the search of Plaintiff's residence are critical to this matter. Probable cause is to be determined based on the totality of the circumstances known to the officer at the time. See *Paff v. Kaltenbach*, 204 F.3d 425, 436 (3d Cir. 2000); *United States v. Yusuf*, 461 F.3d 374, 390 (3d Cir. 2006) ("The probable cause determination is to be made only after considering the totality of the circumstances, which requires courts to consider the cumulative weight of the information set forth by the investigating officer in connection with reasonable inferences that the officer is permitted to make based upon the officer's specialized training and experiences.").

Here, Rossi, the victim, reported to Officer Young the ongoing harassment and invasion of her privacy by Walter Kitko. That harassment escalated to the point where Walter was sending nude pictures of Rossi, sometimes engaging in sexual acts, to Rossi and to her ex-husband via text message. Rossi claims that she did not give permission for such photos to be taken. Furthermore, she knew that the only person that could have had the opportunity to take those photographs was Walter. Furthermore, Walter had asked Rossi if he could take pictures of her, to which she responded no. Rossi indicated that, based on the background in the videos, the videos may have been recorded at the Plaintiff's residence. As Officer Young stated in his affidavit, "[I]t is [r]easonable for Rossi to conclude that Kitko used the backpack to store and transport his equipment for secretly recording images of Rossi." See *United States v. Jones*, 994 F.2d 1051, 1056 (3d Cir. 1993) ("[D]irect evidence is not required for the issuance of a search warrant. Instead, probable cause can be, and often is, inferred by 'considering the type of crime, the nature of the items sought, the suspect's opportunity for concealment and normal inferences about where a criminal might hide . . . property.'").

The test for whether a constitutional violation has occurred is whether there were deliberate or reckless falsehoods in the warrant application. Here, Plaintiff has failed to show that the information Officer Young included in his affidavit was in any way a deliberate or reckless falsehood. Rather, based on the totality of the circumstances and the information known to Officer Young at the time, probable cause clearly existed to search the Plaintiff's residence for evidence and the instruments of Walter's ongoing criminal conduct. See *Illinois v. Gates*, 462 U.S. 213, 238 (1983) (probable cause exists to issue a search warrant where there is a fair probability that contraband or evidence of a crime will be found in a particular place).

### b. Alleged Stale and Unreliable Information in Warrant Application

Next, Plaintiff contends that Officer Young used stale and unreliable information in his affidavit of probable cause in support of his warrant application.[15] (See Doc. No. 117 at 19). Specifically, Plaintiff argues that Officer Young failed to determine the true and correct owner of the Plaintiff's residence and failed to determine that Walter Kitko had not resided at Plaintiff's residence for several years. (*Id.* at 19-20). The fact that Walter had not stayed at Plaintiff's residence for a period of time prior to the application for the search warrant does not make the information in the warrant application stale. As has been detailed above, Officer Young's affidavit of probable cause outlines numerous connections between Walter's criminal conduct and Plaintiff's residence such that there was a reasonable probability that evidence of Walter's criminal conduct would be found at the Plaintiff's residence at the time of the search. See *United States v. Harvey*, 2 F.3d 1318, 1322-23 (3d Cir. 1993).

---

[15] The Court has previously addressed Plaintiff's staleness argument in relation to the legal sufficiency of the affidavit of probable cause. Nonetheless, the Court will briefly address Plaintiff's argument as it relates to the veracity of Officer Young.

Likewise, the fact that Officer Young failed to determine that Walter was not the owner of Plaintiff's residence does not constitute a false statement or omission. Officer Young was acting on information provided to him by Rossi. Rossi told Officer Young that Walter owned the Plaintiff's residence. Rossi told Officer Young that she had met Walter numerous times over the course of several years at Plaintiff's residence to engage in sexual relations. Rossi told Officer Young that, during the time that Rossi met Walter at Plaintiff's residence, Walter was residing there. Further, phone records from Verizon identified Plaintiff's residence as Walter's address. While Plaintiff contends Officer Young should have taken further steps in his investigation to determine the owner of Plaintiff's residence, "the mere fact that a police investigation could have been more thorough does not vitiate probable cause." *Mitchell v. Obenski*, 134 F. App'x 548, 551 (3d Cir. 2005). Here, Rossi presented Officer Young with a credible account of Walter's criminal conduct and Rossi's prior relationship with Walter. Additionally, Officer Young subpoenaed information from Verizon that corroborated Rossi's statements.

This Court must focus on the information the officer had available to him, "not on whether the information resulted from exemplary police work." *Orsatti v. New Jersey State Police*, 71 F.3d 480, 484 (1995) ("[F]or Fourth Amendment purposes, the issue is not whether the information on which police officers base their request for a . . . warrant resulted from a professionally executed investigation; rather, the issue is whether that information would warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested."). Accordingly, having considered the facts and circumstances within Officer Young's knowledge at the time he applied for a warrant to search Plaintiff's residence, the Court finds that it was objectively reasonable for Officer Young to conclude that he had sufficient

35

information to believe that evidence of a crime could be found at Plaintiff's residence, and no reasonable jury could find otherwise. *Id.*; see also *Dintino v. Echols*, 243 F. Supp. 2d 255, 262-63 (E.D. Pa. 2003); *Wilson v. Russo*, 212 F.3d 781, 786 (3d Cir. 2000).

Furthermore, Plaintiff has not offered any evidence that, even if Officer Young had determined that Plaintiff was the true owner of the Punxsutawney residence rather than Walter, such information would have changed Officer Young's application for a warrant to search Plaintiff's residence. While it is true that Officer Young stated in his affidavit of probable cause that he was informed by Rossi that Walter owned the Plaintiff's residence, that information was only one factor in Officer Young's probable cause determination. Equally important to Officer Young's affidavit of probable cause were the following circumstances: Walter had resided at Plaintiff's residence for a number of years, during which time Walter and Rossi were engaged in a relationship; Walter and Rossi met numerous times and had sexual relations at Plaintiff's residence; Rossi believed that Walter secretly recorded her nude and having sexual relations; two cell phones that were used to harass Rossi were registered to Walter at Plaintiff's residence; Walter's Anita, Pennsylvania residence was for sale; Officer Young believed Walter kept recording or surveillance equipment and photographs or videos of Rossi at Plaintiff's residence. Based on these additional factors, taken together, the fact that Walter was not the true owner of Plaintiff's residence has no bearing on Officer Young's probable cause to search the home, for "search warrants are directed, not at persons, but at property where there is probable cause to believe that instrumentalities or evidence of crime will be found." *United States v. Jones*, 994 F.2d 1051, 1055 (3d Cir. 1993); *United States v. Tehfe*, 722 F.2d 1114, 1117 (3d Cir. 1983).

### c. Alleged Misrepresentations or False Impressions

Finally, Plaintiff contends that Officer Young created misrepresentations or false impressions in his warrant application. Specifically, Plaintiff argues that Officer Young's statements concerning the ongoing criminal activity involving Plaintiff's property are untrue because Walter ceased contacting Rossi from the cell phones associated with Plaintiff's residence after Officer Young warned Walter in September and October 2009. Additionally, Plaintiff argues that Officer Young knew or should have known that the cell phones associated with Plaintiff's address were disposable phones, thus reducing or eliminating the relevancy of those phones. The Court has comprehensively addressed these arguments above. In sum, Plaintiff has provided no evidence that Officer Young knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that created a falsehood in his application for a warrant to search Plaintiff's residence.

Accordingly, Plaintiff has failed to adduce evidence that Officer Young withheld any "fact in his ken that 'any reasonable person would have known . . . was the kind of thing the judge would wish to know.'" *Wilson v. Russo*, 212 F.3d 781, 788 (3d Cir. 2000). Likewise, Plaintiff has failed to adduce evidence that Officer Young "entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported" to support his contention that Officer Young made assertions with reckless disregard for the truth. *Id.* Thus, because Plaintiff has failed to adduce sufficient evidence from which a reasonable jury could conclude that Officer Young made statements or omissions that he knew were false, or would have known were false except for his reckless disregard for the truth,

summary judgment must be entered for the Defendant.[16] See *id.*; *United States v. Leon*, 468 U.S. 897, 923 (1984); *Franks v. Delaware*, 438 U.S. 154 (1978).

This Court sympathizes with the Plaintiff in that he was unfortunately caught up in his brother's web of illicit behavior and criminal conduct, which, as Plaintiff noted, "inexplicably continued" even after the police became involved and warned Walter to stop. (Doc. No. 117 at 3). Nevertheless, the fact that Plaintiff was personally impacted by the police investigation into his brother's criminal conduct does not rise to the level of a constitutional violation actionable under § 1983 where, as here, the police complied with the requirements of the Constitution and articulated probable cause sufficient to support a warrant to search the Plaintiff's residence. See *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *Wilson v. Russo*, 212 F.3d 781, 786-87 (3d Cir. 2000); *Franks v. Delaware*, 438 U.S. 154 (1978). Plaintiff has not adduced sufficient evidence from which this Court can conclude that a reasonable jury could find for the Plaintiff.

## VI. CONCLUSION

For the foregoing reasons, the Court concludes that there is no genuine issue as to any material fact and that the Defendant is entitled to judgment as a matter of law. Accordingly, the Court hereby **GRANTS** Defendant's Motion for Summary Judgment (Doc. No. 110). An appropriate order follows.

---

[16] Because the Court finds that Plaintiff has failed to satisfy the first prong of the applicable test—adducing evidence of reckless disregard for the truth, the Court will not address the second prong—the materiality of the omissions or false assertions. Nevertheless, the Court finds that the alleged false statements are not material to a finding of probable cause, and even if those statements were excised from the warrant affidavit, the corrected warrant affidavit would nonetheless establish probable cause to search. *Wilson v. Russo*, 212 F.3d 781, 789 (2000).

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CAMERON J. KITKO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) CIVIL ACTION NO. 3:10-189 |
| v. | ) JUDGE KIM R. GIBSON |
| | ) |
| RANDALL YOUNG, *in his* | ) |
| *individual capacity*, | ) |
| | ) |
| Defendant. | ) |

## ORDER

**AND NOW**, this 20th day of September, 2013, in accordance with the foregoing Memorandum, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (Doc. No. 110) is **GRANTED**.

**BY THE COURT:**

**KIM R. GIBSON,**
**UNITED STATES DISTRICT JUDGE**